[No. 7,044.—Department Two.]

56 619
113 34|

## W. H. BEATTY v. W. H. DIXON.

EQUITY—JURISDICTION—BOUNDARIES.—Where a question of boundary affects a large number of persons, and by proceeding in equity to determine the controversy, a multiplicity of actions at law will be prevented, the additional circumstance, that " the boundaries have become confused by lapse of time, accident, or mistake," is all that is required to give a court of equity jurisdiction of the case.

DISQUALIFICATION—JUDGE.—In a suit in equity to establish confused boundaries, the appointment by the judge of his son as commissioner to run the lines does not disqualify the judge from acting further in the case.

AMENDMENT—DECREE.—The amendment of a decree so as to make it conform to the findings is proper, although made more than six months after the decree is entered.

APPEAL by certain defendants from a judgment, and order denying a motion for a new trial, in the Sixth District Court, County of Sacramento. DENSON, J.

After the decision in Department, the appellant filed his petition that the appeal be reheard in Bank, and the application was denied.

P. Dunlap, W. F. George, and J. H. McKune, for Appellants.

The rule is thus stated by Mr. Adams in his commentary on the law, as administered in the Court of Chancery (p. 237) : " The equity for the ascertainment of boundary arises where lands are held in severalty by independent proprietors, but the boundaries have been confused by the misconduct of the defendant, or of those under whom he claims. The mere confusion of boundary will not create it ; for the fact that a man cannot ascertain his property does not constitute an equity against another person. But it must be shown that the confusion has been caused by the defendant's misconduct, or by the misconduct of those under whom he claims."

In this case, no fact is stated indicating that defendants have done any act to bring this case within the rule.

Judge Story remarks, that " there seems no inclination to favor it " (such jurisdiction), " unless special grounds are laid to sustain it."    (1 Eq. Jur. § 615.)

This action is substantially to try the title to the land in possession of defendants, and claimed by plaintiff ; and in such case equity will not take jurisdiction.    (Abbott v. Allen, 2 Johns. Ch. 519 ; Hickman v. Cook, 3 Humph. 640.)

The equity which will support this action must arise out of some transaction between plaintiff and defendants, and in this case no such connection is shown to exist.    (Miller v. Warmington, 1 Jacob & W. 492 ; Speer v. Crawter, 2 Mer. 410 ; Lange v. Jones, 5 Leigh, 192 ; Stuarts v. Coalter, 4 Rand. 74.)

The proper course for him to pursue would be to survey his land according to his plan, and then bring ejectment for that part in possession of others, thus accomplishing at law in an action what he seeks irregularly by suit in equity.

It was error to amend the decree.    (Code Civ. Proc. § 473 ; Flynn v. Cottle, 47 Cal. 527 ; Carpentier v. Gardner, 29 id. 160 ; Prince v. Lynch, 38 id. 530.)

*H. O. Beatty*, for Respondent Beatty.

The Court has jurisdiction in equity to settle the boundaries, for the following reasons :

The boundaries have become confused by lapse of time, and decay and obliteration of landmarks.

The fixing of the boundaries affects a large number of per-

sons, and the points to be determined are so intermixed that a Court could not determine a controversy between any two parties in an action of ejectment, without inquiry into the rights of others, who would not be before the Court.

The relation of the parties plaintiff and some of the defendants are such, that this is the only available remedy. Some of the parties defendant have bought the land in their possession from the plaintiff. He could not bring an action of ejectment against those holding under himself, nor could he bring an action against contiguous holders, for he no longer has the title. If he cannot pursue this remedy, he has lost his land irrevocably, without the possibility of either recovering the land or collecting the purchase-money.

That the prevention of a multiplicity of suits is in itself sufficient ground, is laid down distinctly by Story in his Equity Jurisprudence (see vol. i, § 621), where the authorities to support the doctrine are fully set out.

Our Supreme Court, in the case of *Wetherbee* v. *Dunn*, 36 Cal. 253, distinctly states this as one of the grounds on which to sustain chancery jurisdiction.

*Clinton L. White*, for Respondents McCracken and Scott.

*P. Dunlap*, and *J. H. McKune*, in reply for Appellants.

Plaintiff claims that he is entitled to maintain this action, as it will prevent a multiplicity of suits. But this is untenable.

It would not prevent multiplicity of suits in an action at law for possession—the same parties can be joined in one action.

Jurisdiction in equity to prevent a multiplicity of actions is not a distinct equity separate from others. But to prevent multiplicity of actions, a court of equity having jurisdiction of the subject-matter, for purposes of discovery or other equity, will go on and give legal relief. (1 Story Eq. § 64 *k*; *Jesus College* v. *Bloome*, 3 Atk. 262; *Ryle* v. *Haggie*, 1 Jacob & W. 236; *Middletown Bank* v. *Russ*, 3 Conn. 135; *Pearce* v. *Creswick*, 2 Hare, 293; *Russell* v. *Clark*, 7 Cranch, 69.)

But it has never yet been decided that because A has separate causes of action against B, C, D, E, F, and G, who have separately intruded on his land, that, to save A the trouble

and expense of several suits, he can go into equity and have relief.

The defendants are owners of their lands in severalty, holding them adversely to plaintiff and to each other, and they do not complain of each other that their boundaries are unsettled. Plaintiff brings this action to compel these defendants to readjust their boundaries *inter sese*, as well as between them and him.

A fair way to state the proposition would be: The plaintiff cannot, as a part of the cause of action, enforce a claim which he could not do as a separate cause of complaint.

Suppose the plaintiff, not having any cause of action against defendants, should complain that defendants among themselves should correct their lines. If plaintiff could not maintain such action, can he maintain it as a part of a cause of action not necessary in settling his rights?

SHARPSTEIN, J.:

This action was commenced against nineteen defendants. It is alleged, among other things in the complaint, that the plaintiff and the defendants are the owners in severalty of a certain tract of land, the boundaries of which, through the lapse of time, the carelessness of occupants, and the absence of natural monuments, have become confused and uncertain. The external lines of the entire tract, and those describing the several subdivisions of it, have been obliterated, so that no one of the defendants is occupying according to the original boundaries of his claim, which causes those occupying tracts contiguous to plaintiff's to encroach upon his land. All of the parties are equally interested in having said boundaries determined in one action, in order to avoid a multiplicity of suits at law, which would necessarily have to be resorted to if the relief prayed for in this action be denied. The appellants in their answers do not deny any of these allegations, except that which charges them with encroaching upon the lands of others, and they pray that the true lines of their several tracts may be fixed and established.

One of the grounds upon which it is insisted that the judgment in this case should be reversed is, that the facts alleged do not constitute a sufficient ground for the interference of a court

of equity. This raises the question whether the case is one within the exclusive jurisdiction of a court of law, or of which a court of equity has concurrent jurisdiction. The circumstance that the plaintiff might obtain all the relief to which he is entitled in a court of law would not necessarily oust a court of equity of jurisdiction of the case. There might, nevertheless, be some equitable ground upon which that jurisdiction could be upheld; "such as fraud, or some relation between the parties which makes it the duty of one of them to protect and preserve the boundaries; or the prevention of a multiplicity of suits; or that the question affects a large number of persons, and the boundaries have become confused by the lapse of time, accident, or mistake." (*Wetherbee* v. *Dunn*, 36 Cal. 255.) One writer on equity jurisprudence says: "The relief which equity affords in the case of confusion of boundaries is referable to the head of accident. When *lands* have become mixed or confounded without the fault of the plaintiff, equity will appoint a commission to settle the boundaries." (Willard's Eq. Jur. 56.) The prevailing doctrine upon this subject is well expressed, we think, by Mr. Tyler, who says: "From the cases examined, it is very clear that, both in England and in this country, courts of equity will always take cognizance of controversies in respect to boundaries of land whenever the parties cannot obtain substantial relief in a court of law, or where equitable circumstances are shown, calling for the interference of a court of equity; although, as a rule, unless some statute exists upon the subject, the existence of a controverted boundary is not of itself alone a ground for relief in equity. Other circumstances must be shown which seem to require the interference of the Court." (Tyler's Law of Boundaries, 266.)

Is it shown that any of these circumstances exist in this case? Is it shown that the question involved in this action affects a large number of persons, and that by proceeding in equity to determine the controversy a multiplicity of actions at law will be prevented? If so, the additional circumstance, that "the boundaries have became confused by lapse of time, accident, or mistake," is all that is required to give a court of equity jurisdiction of the case. (*Wetherbee* v. *Dunn*, *supra*.) The existence of these circumstances is alleged in the complaint, and not denied in any of the answers.

Before making its interlocutory decree, the Court found upon all the issues which it could find upon before the commissioner, who was appointed to survey and fix the boundaries in controversy, had reported. The appellants insist that additional findings should have been filed after the report was made, and before entering the final decree. We do not think so. The only question which the Court had to determine after the report was made was, whether it should be confirmed. If confirmed, it constituted the basis of the final decree. There was no occasion for any findings in addition to those upon which the interlocutory decree was based.

As to the alleged insufficiency of the evidence to justify the decision of the Court, an examination of that which has been brought up in the bill of exceptions satisfies us that the evidence, although conflicting upon some points, is sufficient to justify the decision.

The rulings of the Court, upon the trial, which were excepted to, were not, as we view them, erroneous.

We know of no authority upon which it could be held that the appointment by the judge of his son, as a commissioner to run the boundary lines, disqualified the judge to further act in the case, although the fixing of his son's compensation for such services would devolve upon the Court of which he was the judge.

The amendment of the interlocutory decree, so as to make it conform to the findings and judgment of the Court, was proper, although made more than six months after the decree was entered. There being matter of record, by which the amendment could be made, the power of the Court to make it is too well settled to admit of doubt.

After a careful consideration of the points presented by the appellants, we are satisfied that the order and judgment of the Court below ought not to be disturbed.

Judgment and order appealed from affirmed.

MYRICK, J., and THORNTON, J., concurred.